Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:       (212) 446-4800
Facsimile:       (212) 446-4900

-and-

David L. Eaton (admitted *pro hac vice*)
A. Katrine Jakola, P.C. (admitted *pro hac vice*)
John R. Worth (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North La Salle Street
Chicago, Illinois 60654
Telephone:       (312) 862-2000
Facsimile:       (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Brian H. Richardson (VA 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:       (804) 644-1700
Facsimile:       (804) 783-6192

*Co-Counsel to the Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
# RICHMOND DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| LE TOTE, INC., *et al.*,[1] | ) | Case No. 20-33332 (KLP) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |
| LORD & TAYLOR, LLC, | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Adversary Proceeding No. 20-_____ |
|  | ) |  |
| COMPASS GROUP USA, INC., | ) |  |
| d/b/a FLIK INTERNATIONAL CORP, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.stretto.com/letote.  The location of the Debtors' service address is 250 Vesey Street, 22nd Floor, New York, New York 10281.

## COMPLAINT FOR TURNOVER FUNDS OWED TO LORD & TAYLOR, LLC

Plaintiff Lord & Taylor, LLC (the "Plaintiff") files this complaint for turnover against Compass Group USA, Inc. d/b/a Flik International Corp ("Compass" or the "Defendant").  In support thereof, the Plaintiff alleges as follows:

### Preliminary Statement

1.　　　Compass owes the Plaintiff $350,000.00 in connection with a Food Services Agreement, dated as of May 30, 2008, by and between the Plaintiff and the Defendant.

2.　　　Despite repeated requests over a number of months, Compass has refused and continues to refuse to turn over the funds that are due and owing to the Plaintiff.  The refusal of Compass to repay funds due and owing has deprived the Plaintiff and its creditors of value that is unquestionably owed.  Therefore, the Plaintiff hereby files this adversary complaint to recover the funds that it is owed.

### The Parties

3.　　　On August 2, 2020, the Plaintiff and certain of its affiliates, as debtors and debtors in possession, filed voluntary petitions under Chapter 11 of the Bankruptcy Code in this Court.[2] The Plaintiff is a party to the Agreement (as defined below).

4.　　　The Defendant, Compass, is a national foodservice and hospitality company.  The Defendant is a party to the Agreement (as defined below).

---

[2]  A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of Ed Kremer, Chief Restructuring Officer, of Le Tote, Inc., in Support of Chapter 11 Petitions and First Day Motions* filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on August, 2, 2020 (the "Petition Date").

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

7.      Pursuant to section 542 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Plaintiff seeks the turnover of $350,000.00 from the Defendant.

## Statement of Facts

### A.      The Plaintiff and Compass Enter into a Food Services Agreement in 2008

8.      On May 30, 2008, the Plaintiff and the Defendant entered into that certain Food Services Agreement, dated as of May 30, 2008 by and between the Plaintiff and the Defendant (as amended, the "Agreement"), pursuant to which Compass agreed to provide food services in eight (8) of the Plaintiff's retail stores.   A genuine copy of the Agreement is attached hereto as **Exhibit A**.

9.      Pursuant to the terms of the Agreement, the Plaintiff provided Compass with an advance of $350,000.00 (the "Advance") "to fund one (1) month's capital needs" for certain operating charges. *Ex.* A, p. 9.  The Agreement provides that "[t]he Advance shall be reimbursed to [the Plaintiff] within ten [10] days following termination of the Agreement." *Id.*  In addition, section 5.2 of the Agreement provides that termination of the Agreement does not operate to limit, reduce, cancel, or otherwise modify payment obligations of any kind that have accrued as of the date of termination. *Ex. A*, p. 3.  Finally, section 13.6 of the Agreement specifically prohibits setoff. *Ex. A*, p. 5.

**B.      Termination of the Agreement and Refusal to Repay the Advance**

10.      On May 3, 2019, the Plaintiff provided Compass with 120 days' prior notice of termination of the Agreement (the "First Termination Notice").  A genuine company of the First Termination Notice is attached hereto as **Exhibit B**.  The First Termination Notice was provided in accordance with section 5.1 of the Agreement and stated that the termination of the Agreement was effective as to six (6) of the Plaintiff's retail locations.  The Termination Notice requested that Compass reimburse the Plaintiff for the Advance pursuant to the terms of the Contract.

11.      Compass failed to repay the Advance and thus breached its obligations under the terms of the Agreement.

12.      On March 20, 2020, the Plaintiff provided Compass with 30 days' prior notice of termination of the Agreement with respect to all eight (8) locations (the "Second Termination Notice").  A genuine company of the Second Termination Notice is attached hereto as **Exhibit C**.  The Second Termination Notice was provided in accordance with section 5.1 of the Agreement and stated that the termination of the Agreement was effective as of April 30, 2020.  The Termination Notice requested that Compass reimburse the Plaintiff for the Advance pursuant to the terms of the Contract.

13.      Compass failed to repay the Advance and thus breached its obligations under the terms of the Agreement.

14.      On May 14, 2020, the Plaintiff again made demand on Compass for repayment of the Advance.  A genuine copy of the May 14, 2020 letter from the Plaintiff to Compass is attached hereto as **Exhibit D**.

15.      Again, Compass failed to repay the Advance in breach of its obligations under the Agreement.

16.     To this day, Compass continues to refuse to repay the Advance that is due and owing to Plaintiff.

## Count I: Turnover of the Advance

17.     The Plaintiff hereby repeats and realleges each of the above paragraphs as though fully set forth herein.

18.     The Advance constitutes property of the Debtors' estate under section 541 of the Bankruptcy Code that is due and owing to the Plaintiff and in the possession of the Defendant.  It is therefore subject to turnover pursuant to section 542 of the Bankruptcy Code and Bankruptcy Rule 7001.

19.     The Advance is due and payable to the Plaintiff, who is now a debtor in these Chapter 11 cases.

20.     More than 120 days have passed since the Plaintiff terminated the Agreement and requested the return of the Advance from the Defendant.  The Defendant has refused to repay the Advance, has breached the Agreement and is wrongfully possessing property of the Plaintiff's bankruptcy estate.

*[Remainder of page intentionally left blank]*

**WHEREFORE**, the Plaintiff respectfully requests judgment in its favor and against

Compass requiring the turnover of the Advance in the amount of $350,000.00, plus attorneys' fees

and costs, and such other relief as the Court deems appropriate under the circumstances.

Richmond, Virginia
Dated:   October 7, 2020

/s/ *Jeremy S. Williams*

<table>
<tr><td><strong>KUTAK ROCK LLP</strong></td><td><strong>KIRKLAND & ELLIS LLP</strong></td></tr>
<tr><td>Michael A. Condyles (VA 27807)</td><td><strong>KIRKLAND & ELLIS INTERNATIONAL LLP</strong></td></tr>
<tr><td>Peter J. Barrett (VA 46179)</td><td>Steven N. Serajeddini, P.C. (admitted <em>pro hac vice</em>)</td></tr>
<tr><td>Jeremy S. Williams (VA 77469)</td><td>601 Lexington Avenue</td></tr>
<tr><td>Brian H. Richardson (VA 92477)</td><td>New York, New York 10022</td></tr>
<tr><td>901 East Byrd Street, Suite 1000</td><td>Telephone:    (212) 446-4800</td></tr>
<tr><td>Richmond, Virginia 23219-4071</td><td>Facsimile:    (212) 446-4900</td></tr>
<tr><td>Telephone:    (804) 644-1700</td><td>Email:  steven.serajeddini@kirkland.com</td></tr>
</table>

KUTAK ROCK LLP

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
Brian H. Richardson (VA 92477)
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-4071
Telephone:        (804) 644-1700
Facsimile:        (804) 783-6192
Email:        Michael.Condyles@KutakRock.com
        Peter.Barrett@KutakRock.com
        Jeremy.Williams@KutakRock.com
        Brian.Richardson@KutakRock.com


*Co-Counsel to the Debtors*
*and Debtors in Possession*


KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
Steven N. Serajeddini, P.C. (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900
Email:  steven.serajeddini@kirkland.com

-and-

KIRKLAND & ELLIS LLP
KIRKLAND & ELLIS INTERNATIONAL LLP
David L. Eaton (admitted *pro hac vice*)
A. Katrine Jakola, P.C. (admitted *pro hac vice*)
John R. Worth (admitted *pro hac vice*)
Jaimie Fedell (admitted *pro hac vice*)
300 North La Salle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200
Email:  david.eaton@kirkland.com
        jaimie.fedell@kirkland.com

*Co-Counsel to the Debtors*
*and Debtors in Possession*

## Exhibit A

**Agreement**

## FOOD SERVICES AGREEMENT (FEE)

This FOOD SERVICES AGREEMENT, as from time to time amended (**Agreement**), is entered into between the undersigned client (**Client**), and Compass Group USA, Inc. d/b/a Flik International Corp (**Compass**) and Sarabeth's Kitchen Inc. (**Sarabeth**), who, in consideration of the promises contained herein, agree as follows:

1. **DEFINITIONS.** In addition to terms defined elsewhere herein, the term **Program** means the attached Services Program. **Effective Date** shall mean the date as set forth on the signature page in which Compass begins performance of Services. **Obligations** mean all present and future liabilities, obligations of payment and performance, and indebtedness of one party to another party, of whatever kind, now due or that become due, absolute or contingent, and whether joint, several, or joint and several. **Equipment, fixture,** and **inventory** have the meanings assigned to them in Article 9, and **person** has the meaning assigned to it in Article 1, of the New York Uniform Commercial Code in effect as of the Effective Date.

2. **CLIENT SERVICES.** Compass shall provide services to Client as follows (collectively **Services**):
   2.1. **Food Services; Sales.** Client grants to Compass the exclusive right to control and operate all food and beverage services and sales for the employees, customers, guests, and invitees of Client, including but not limited to, dining, catering, delivery, and temporary locations or cart service (collectively **Food Services**) at the sites and facilities set forth on Exhibit A (collectively **Premises**) at such prices and times of operation as set forth in the Program attached hereto. Client will seek to utilize the various services of Compass as often as possible. Client agrees to send a notice to its PR department that Compass is the preferred food supplier for special events. Client will keep Compass fully advised of its special event plans. On a limited basis, Client may have outside caterers for special events which shall not be held within the cafes. Additionally, Compass shall provide meal services to the Executive Offices of the NY store as presently conducted. In this regard, Client may order food and beverage as needed for its business meetings which shall be delivered by Compass at cost plus twenty percent (20%) for delivery service.
   2.2. **Sanitation Services.** Compass shall be responsible for such daily housekeeping and sanitation services in the food preparation, storage, dining, and serving areas of the Premises as follows (collectively **Sanitation Services**):
      2.2.1 Cleaning dining furniture;
      2.2.2 Cleaning floors, walls up to six (6) feet above floor level, and the exterior of hoods, ducts, vents, and other equipment and fixtures used by Compass in food storage and preparation areas; and
      2.2.3 Collecting and properly packing all refuse from such areas and placing the packed refuse at site(s) on Premises designated by Client.
   2.3. **Other Services.** Compass shall have the right to operate and provide such other services and product sales as agreed from time to time by the parties.
   2.4. **Special Services.** Should Client request the performance of services which are in additional to, or are at prices, locations, or times other than as contemplated in this Agreement (**Special Services**), and such Special Services result in an increase in costs to Compass, the costs shall be agreed upon and Compass shall charge Client an additional amount for such Special Services.
   2.5. **Quality of Services.** Compass shall supply Services of excellent quality, on a timely basis, and with appropriate products in accordance with the terms hereunder. In the event of a complaint by a customer, Compass shall resolve the complaint as soon as possible. If the customer is not satisfied, Client shall have the final word as to the resolution of the complaint.
   2.6. **Inspection of Services.** Client may inspect the Services, without notice, on any business day at any time Client in its sole discretion may deem desirable. The inspection will be conducted in a manner to avoid disruption to the Services.
   2.7. **Staff for Services.** Compass shall keep and maintain an adequate professional staff of qualified Employees and agents (as defined in Section 6.4 herein) for the performance of Services and related administration.
   2.8. **Inventory for Services.** Compass shall provide or cause the provision of:
      2.8.1 An adequate and appropriate inventory sufficient for the performance of Services; and
      2.8.2 The timely and full payment for such inventory. However, Compass shall invoice Client for the cost of such inventory, and upon receipt of payment, title to such inventory shall vest in Client.
   2.9. **Independent Contractor.** Compass shall perform such Services as an independent contractor. Neither party intends, and nothing contained in this Agreement shall be construed, to establish a partnership or joint venture between the parties.
   2.10. **Compass Obligations.** Compass is liable to Client for the proper performance of its Obligations

under this Agreement.

**2.11. Sarabeth Obligations.** Sarabeth has entered into a License Agreement dated contemporaneously herewith, pursuant to which it has licensed Compass to operate Sarabeth restaurants at the Premises at such time as the Premises are operated under the Sarabeth name (a copy of the License is annexed hereto (the **License**). To the extent any terms hereof are in conflict with the terms of the License, the terms of the License will control. With the exception of Section 7 "Indemnification" below, Sarabeth's obligations hereunder are solely limited to its obligations under the License Agreement and then only for the period of time a Premises is operated as a Sarabeth and for obligations specifically imposed upon Sarabeth herein.

**3. CLIENT PREMISES.** To facilitate the performance of Services, Client shall furnish, at its expense at the Premises:

**3.1. Operation Facilities.** Interior facilities for exclusive Compass use, supplied per such specifications prepared by Compass and Clients as reasonably necessary to perform the Services; the parties shall mutually agree as to the design and construction of the facilities but Client shall control the design and construction.

**3.2. Equipment.** Equipment in the food preparation, storage, dining, and serving areas for exclusive Compass use as identified in the Program or as reasonably necessary to sufficiently perform the Services conducted at Client's request (collectively **Services Equipment**);

**3.3. Administration Offices.** Office(s), and appropriate equipment within the offices, adjacent to the Operation Facilities as identified in the Program or as reasonably sufficient in space and equipment for the exclusive administrative use by Compass staff (collectively **Offices**); and

**3.4. Utilities.** All utilities as identified in the Program or as reasonable and necessary for the use of the Offices and the efficient performance of the Food Services, Sanitation Services, and such other services conducted at Client's request, and to be supplied under specifications provided by Compass (**Utilities**).

**3.5. Cleaning; Maintenance; Safety.**

**3.5.1** Client shall keep clean all walls above six (6) feet from floor level, windows, ceilings, lighting, ventilation fittings and interiors, and grease traps; and

**3.5.2** The Premises, Services Equipment, Offices, and Utilities shall be serviced and kept by Client in a good workmanlike manner and in a safe operating condition and further shall be maintained, replaced, and repaired to ensure continued fitness for their particular and intended purposes, and in accordance with relevant manufacturer warranties and recommendations. Notwithstanding the foregoing, if Services Equipment provided by Client becomes inoperative, hazardous, or inefficient to operate, Compass shall notify Client and have the right to effect repairs or replacements at the expense of the Client, if the Client fails to do so within twenty (20) days after ten (10) days' notice by Compass to Client of said Equipment deficiency. .

**4. FINANCIAL TERMS AND PAYMENT FOR SERVICES.**

**4.1. Financial Terms; Programs.** Client is liable for and promises to pay to Compass the amount of each Service as set forth in the billing statement prepared by Compass (**Billing Statement**) in accordance with the terms of the Program, as may be amended from time to time. Client covenants and agrees that the terms of the Program shall be incorporated into this Agreement as though fully set forth herein and shall constitute additional and supplemental terms and provisions hereto.

**4.2. Payments.** All payments due hereunder shall be made at the address set forth in the Billing Statement. Payments must be payable in U.S. currency and drawn on a financial institution located in the United States. Compass can accept partial payments, unsigned payments, late payments, interest payments, and Default Charges without waiving any of its rights under this Agreement.

**4.3. Other Fees; Charges.** If Client fails to pay within twenty (20) days the full amount of any Client Obligation under this Agreement or any other agreement with Compass (each a **Payment Default**), Client shall be liable for and promises to pay to Compass a **Default Charge**, which shall accrue on the twentieth day following the due date upon the average daily balance of unpaid and past due payments existing as of such accrual date. Compass' receipt and acceptance of any Default Charges shall not constitute a waiver or cure of the Payment Default. Default Charge is calculated at a rate of one percent (1.0%) per month of the unpaid balance.

**4.4. Audit.** All records shall be kept on file by Compass for a period of three (3) years from the date the record is made, and Compass shall, upon reasonable notice, give the Client, or its agent the opportunity at a reasonable time of inspecting, examining, auditing, and copying, during normal business hours, such of Compass' business records which are solely and directly relevant to the financial arrangements set forth in the Program. The cost of such inspection, examination, and audit will be at the sole expense of the Client and such inspection, examination, and audit shall be conducted at the Compass locations where said records are normally maintained. Such information shall be Confidential Information and shall be subject to the terms of

Section 13.9 herein.

**4.5. Billing.** Each Billing Statement will be presumed to be correct and accurate evidence of the then-current Client Obligations or the information stated therein unless Client provides notice specifying the error or errors. Notwithstanding Client's notice to Compass of billing errors, Client shall perform or pay its non-disputed Obligations hereunder in complete accordance with the applicable Billing Statement unless and until Compass otherwise consents in writing.

**5. AGREEMENT TERM.** Unless sooner terminated as provided in this section, the term of this Agreement shall commence on the Effective date and continue for five (5) years from the date of the opening of either the renovated New York store café or the renovated Manhasset store café transitioned to the Sarabeth's concept **(Initial Term)** and shall continue for consecutive one-year terms from year to year thereafter.

**5.1. Permitted Termination.** Notwithstanding the foregoing, this Agreement may be terminated:

5.1.1 After the first two and one-half years of this Agreement, effective upon one hundred twenty (120) days' prior notice by either party to the other; or

5.1.2 At any time after the occurrence or continuance of a Payment Default or other Default that is material to the whole of this Agreement that has not been remedied in accordance with Section 11 herein.

5.1.3 In the event that Client fails to comply with the provision entitled "Client Investment & Conversion Plan" set forth in the Services Program: Fee attached hereto, Compass may terminate this Agreement upon thirty (30) days written notice.

**5.2. Survival of Obligations.** Termination of this Agreement shall not operate to limit, reduce, cancel, or otherwise modify any Obligations then accrued.

**5.3. Equipment Return.** Promptly following termination of this Agreement, Compass shall return to Client such Services Equipment, Offices, and Utilities in a similar condition, Ordinary Wear and Tear expected. **Ordinary Wear and Tear** shall have the meaning commonly attributed to such term as well as mean losses or damage to chinaware, glassware, flatware, trays, utensils, and other smallwares which may result from breakage, theft, over-use, or misuse.

**6. REPRESENTATIONS, WARRANTIES, AND COVENANTS.** The following representations, warranties, and covenants are made by the parties at the time and from the Effective Date hereof and shall survive the termination of this Agreement.

**6.1. Business Status; etc.** The execution, delivery, and performance by the parties of this Agreement are within their respective powers, have been duly authorized by all necessary action, and do not and will not contravene their respective charters, agreement of partnership, or by-laws. This Agreement constitutes the valid and legally binding Obligations of the parties, enforceable in accordance with its terms. The parties' respective chief executive offices, principal places of business, and the places of record retention are located at the addresses set forth on the signature page.

**6.2. Taxes; Assessments.** Compass shall pay when due all federal, state, local, and other governmental taxes or assessments in connection with the operation and performance of the Services. Compass shall pay when due all license and permit fees in connection with Services. Client shall pay when due all federal, state, local, and other governmental sales, use, property taxes or assessments in connection with the Premises, Services Equipment, Offices, Utilities, and payment of Client Obligations. Client shall reimburse Compass for all license and permit fees paid in connection with Services, which cost shall be included as an Operating Charge as defined in the Program. Client shall be responsible for renewing and funding liquor license(s) as presently owned.

**6.3. Compliance with Laws.** Compass and Client shall comply with all federal, state, and local laws applicable to their Obligations. Compass shall keep in effect all necessary permits, licenses, and food handlers' cards and will post such permits where required.

**6.4. Employees.** Compass Employees performing Services or administrative work on Premises shall be subject to the rules and regulations established by Client as reasonable and necessary for its Premises, Operation Facilities, Services Equipment, and Offices, which rules and regulations shall not be in violation of any federal, state, or local laws. Client shall not, during the term of this Agreement nor for one (1) year thereafter, solicit to hire, hire, or contract with any Compass Employee, manager, director, or officer. **Employee** shall collectively mean employees of Compass, its parent, and affiliated companies. In the event that Client breaches the terms of this provision, Client shall pay Compass one (1) times the annual salary of such employee. Client will initially review all prospective management employees with the HR staff of client to ensure that Client has no initial objection to such employee. Client's HR department will review prospective employees as to their appearance, demeanor and behavior.

7. **INDEMNIFICATION.**

7.1. **Mutual Indemnification.** Each party (Lord & Taylor, LLC, Compass Group USA, Inc. d/b/a Flik International Corp and Sarabeth's Kitchen Inc.) shall indemnify, defend, and hold harmless the other(s) from any and all losses, damages, or expenses, including reasonable attorneys' fees, arising out of or resulting from claims or actions for bodily injury, death, sickness, property damage, or other injury or damage if caused by any negligent act or omission or breach of such party or non-compliance with applicable laws, regulations, and rules, including payment card industry data security standards (except to the extent caused by the negligent act or omission or breach or non-compliance of the other party(ies), its/their employees, or agents).

7.2. **Notification of Claim.** Notification of an event giving rise to an indemnification claim (**Notice**) must (a) be received by the indemnifying party promptly (b) include a brief factual summary of the damage and cause thereof. An indemnification claim is expressly subject to, and conditioned upon, compliance with the Notice provisions hereunder.

8. **INSURANCE.**

8.1. **Compass.** Compass shall obtain and maintain insurance for the following risks in such amounts under such policies as appropriate: general liability (including contractual and products-completed operations liability) in an amount not less than Two Million Dollars ($2,000,000.00) with umbrella coverage in an amount not less than five million dollars ($5,000,000.00); business automobile coverage in an amount not less than One Million Dollars ($1,000,000.00); liquor liability in an amount of One Million Dollars ($1,000,000.00) and workers' compensation (including employers' liability coverage in an amount not less than One Million Dollars ($1,000,000) in an amount not less than that required by applicable statute).

8.2. **Client.** Client shall obtain and maintain All Risk insurance, with coverage for the Operation Facilities, Services Equipment, Offices, and Utilities against risks covered by standard forms of fire, theft, and extended coverage and shall maintain general liability insurance in such amounts under such policies as appropriate, but not less than One Million Dollars ($1,000,000.00) per occurrence, with excess coverage in an amount not less than Five Million Dollars ($5,000,000.00) to cover claims in the aggregate.

8.3. **Sarabeth.** Sarabeth shall maintain such insurance as is provided for in the License Agreement and Supply Agreement.

8.4. **Certificates of Insurance.** Certificates of Insurance for such coverage shall be provided by each party to the other party.

9. **COMPASS VENDORS.** In connection with Services provided hereunder, Compass shall purchase inventory, equipment, and services from various sellers and vendors selected by Compass at its sole discretion, including Sarabeth pursuant to a Supply Agreement dated contemporaneously herewith (each a **Vendor**). Purchases from Vendors shall be made under such terms Compass deems in its sole discretion as acceptable (**Vendor Terms**). All **Vendor Terms** are the exclusive obligation and property of Compass. Client does not have any liability under, or any right to, any Vendor Terms and no Vendor Terms will operate to reduce or otherwise affect the amount or performance of Client's Obligations. With the exception of Sarabeth's ingredients and trademarked products, Compass will not have any ownership interest in the Vendors. Compass agrees that there will be no conflicts of interest.

10. **PROPRIETARY MARKS.** Client acknowledges that the names, logos, service marks, trademarks, trade dress, trade names, and patents, whether or not registered, of Compass (collectively **Marks**), are proprietary Marks of Compass, and its affiliated and parent companies, and Client will not use the Marks for any purpose except as expressly permitted in writing by Compass. Client acknowledges that the names, logos, service marks, trademarks, trade dress, trade names, and patents, whether or not registered, of Sarabeth's (collectively **Sarabeth's Marks**), are proprietary Sarabeth's Marks of Sarabeth's, and its affiliated and parent companies, and Client will not use the Sarabeth's Marks for any purpose except as expressly permitted in writing by Sarabeth's. Compass agrees not to use the Lord & Taylor trademark for any purpose except as expressly permitted in writing by Client.

11. **DEFAULT.** The occurrence of one or more of the following events shall constitute a default under this Agreement (a **Default**): (a) Each and every occurrence of a Payment Default (no waiver, deferral, or compromise of any payment obligations or prior Payment Default shall extend to, or constitute a waiver of, any subsequent or other Payment Defaults or impair any Compass termination rights or remedies at law or in

equity); (b) A party's failure to perform when due any Obligation under this Agreement (except a Payment Default, which shall be subject to subsection (a) above) when such failure continues for a period of thirty (30) days subsequent to notice thereof; (c) A party's breach of any warranty, representation, or covenant under this Agreement when such failure continues for a period of thirty (30) days subsequent to notice thereof; and (d) A party: (i) becomes insolvent or unable to pay its debts as they become due; (ii) ceases to do business as a going concern; or (iii) makes an assignment for the benefit of creditors, applies to or petitions any tribunal for the appointment of a custodian, receiver, or trustee for itself or any substantial part of its assets, or commences any proceeding with respect to itself under any bankruptcy, reorganization, readjustment of debt, insolvency, receivership, dissolution or liquidation law or statute of any jurisdiction, or if it files any such application or petition, or if such proceeding is commenced against a party.

## 12. DISPUTE RESOLUTION AND GOVERNING LAW.

**12.1. Good Faith Negotiation.** The parties agree that any dispute, controversy, claim, or disagreement arising out of or relating to this Agreement, or the breach, termination, validity, or enforceability of any provision of this Agreement (each a **Dispute**) shall be negotiated between them in good faith in an attempt to reach a just and equitable solution satisfactory to both parties for a period of thirty (30) days.

**12.2. Governing Law; Exclusive Choice of Forum.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York. Any Dispute not remedied within thirty (30) days after complying with the Obligations set forth in 12.1 herein, shall be submitted to binding arbitration in accordance with the American Arbitration Association, Commercial Arbitrative Rules in New York, New York.

## 13. MISCELLANEOUS.

**13.1. No Assignment.** Neither party may assign this Agreement to an unaffiliated business entity without the prior written consent of the other party.

**13.2. Force Majeure.** In case performance of any Obligations hereunder (other than the payment of monies due) shall be delayed or prevented because of compliance with any law, decree, or order of any governmental agency or authority, either local, state, or federal, or because of riots, war, public disturbances, strikes, lockouts, differences with workmen, fires, floods, Acts of God, epidemic, pandemic, or any other reason whatsoever which is not within the control of the party whose performance is interfered with and which, by exercise of reasonable diligence said party is unable to prevent, the party so suffering may at its option suspend, without liability, the performance of its Obligations hereunder (other than the payment of monies due) during the period such cause continues, and, if mutually agreed to and if possible, extend the term of this Agreement for the period of such suspension of the performance of duties hereunder.

**13.3. No Modification.** No modification or change to this Agreement shall be binding upon any party unless contained in a writing signed by the other party. No course of dealing, course of performance, or trade usage, and no parol evidence of any nature, shall be used to supplement or modify such agreement and understanding.

**13.4. No Waiver.** No waiver or course of dealing between the parties shall extend to, or constitute a waiver of, any subsequent or other Defaults or impair any right consequent thereon. No failure or delay on the part of any party in exercising any right, power, or privilege hereunder and no course of dealing between the parties shall operate as a waiver of any Default or any such right, power, or privilege. No waiver to this Agreement shall be binding unless contained in a writing signed by the waiving party.

**13.5. Effectiveness; Severability; Final Agreement.** This Agreement shall be deemed accepted by Compass in the State of New York at the address set forth below. Any provisions of this Agreement found upon judicial interpretation or construction to be prohibited by law shall be ineffective to the extent of such prohibition, without invalidating the remaining provisions hereof. All words used shall be understood and construed to be of such number and gender as the circumstances may require. The headings in this Agreement have been included for reference purposes only and shall not determine the meaning or interpretation of this Agreement. This Agreement represents the final agreement between the parties with respect to the content contained herein and shall supersede and replace any prior oral, written, or implied understandings between the parties.

**13.6. Setoff.** Neither party may deduct, setoff, or apply all or part of any payment Obligations against any sums due from the other party.

**13.7. Signatures.** Agreement to, and acceptance of, this Agreement may be made and evidenced by facsimile signature or in an electronic form evidencing signatures of both parties hereto.

**13.8. Notices.** All notices to be given under this Agreement shall be in writing and shall be served either personally, by facsimile, by deposit with an overnight courier with charges prepaid, or by deposit in the United States mail, first-class postage prepaid by registered or certified mail, addressed to the parties at the address or

facsimile number stated below with a copy to the Chief Financial Officer or at any other address as designated by one party upon notice to the other party. Any such notices shall be deemed to have been given (a) upon delivery in the case of personal delivery; (b) upon the first business day following facsimile receipt; (c) one business day after deposit with an overnight courier; or (d) three business days after deposit in the United States mail.

13.9. **Confidentiality**. In the course of providing Services hereunder, the parties may be exposed to trade secrets or other confidential or proprietary information and materials of the other party which includes, but is not limited to, menus, recipes, signage, food service surveys and studies, management guidelines, procedures, operating manuals, and software, all of which shall be identified as confidential (**Confidential Information**). The parties agree to hold in confidence and not to disclose any Confidential Information during, and for two (2) years after, the term of this Agreement, except that the parties may use or disclose Confidential Information (a) to its Employees and affiliates or others to the extent necessary to render any service hereunder, provided that the other party is first notified of the information that will be provided to any party outside of this Agreement and provided further that such information is disclosed only after such party is required to maintain it in confidence as required hereunder; (b) to the extent expressly authorized by either party; (c) to the extent that at the time of disclosure, such Confidential Information is in the public domain, or after disclosure, enters the public domain other than by breach of the terms of this Agreement; (d) that is in the possession of either party at the time of disclosure and is not acquired directly or indirectly from the other party; (e) that is subsequently received on a non-confidential basis from a third party having a right to provide such information; or (f) as required by order during the course of a judicial or regulatory proceeding or as required by a governmental authority. The parties agree not to photocopy or otherwise duplicate any Confidential Information without the express written consent of the other party. Each party's Confidential Information shall remain the exclusive property of the party and shall be returned by the party to the other party upon termination or expiration of this Agreement. In the event of any breach of this provision, the parties shall be entitled to equitable relief, in addition to all other remedies otherwise available to it at law. This provision shall survive the termination or expiration of this Agreement.

13.10. **Information Technology Security**. Client shall cooperate in allowing Compass to connect the Compass information technology systems with the Client systems as reasonably necessary. Client shall be solely responsible for its information technology systems, including, but not limited to, point-of-sale devices, e-commerce solutions, and computer hardware and software services and applications (**Client Systems**). As such, Client shall indemnify, defend and hold harmless Compass from and against all claims, liabilities, damages and expenses (including reasonable attorneys' fees) arising out of, related to or resulting from: (i) the Client Systems, including, but not limited to, any breach or compromise thereof or any failure by Client to take the necessary security and privacy protections as are commercially reasonable under the circumstances; (ii) Client's failure to comply with any applicable laws or regulations related to the protection of personal information; and/or (iii) Clients failure to comply with any card association rules related to the protection of cardholder data, including, but not limited to, the payment card industry data security standards provided that the above indemnification obligations will not apply if any of the above events were caused by the negligent acts or omissions of Compass.

**EFFECTIVE DATE:** _____

**CLIENT:** Lord & Taylor LLC

By: _____
(**AUTHORIZED OFFICER OR PRINCIPAL SIGNATURE**)

Name:  Michael G. Culhane

Title:  Executive Vice President & CFO

Signature Date: _____

Principal Address:  See Exhibit A – Facility List

Premises Location(s):  See Exhibit A – Facility List

CLIENT NOTICE TO:
Name:  Michael G. Culhane
Title:   Executive Vice President & CFO
Facsimile No.:   212-827-5224

**COMPASS GROUP USA, INC. D/B/A FLIK INTERNATIONAL CORP**
3 International Drive
Rye Brook, NY  10573

By: _____

Name: Mr. Scott Davis

Title: President

Signature Date:  may 30th 2008

**COMPASS NOTICE TO:**
Name: Mr. Scott Davis
Title: President
Facsimile No.: (914) 935-5330

**COPY OF NOTICE TO:**
General Counsel & Secretary
2400 Yorkmont Road
Charlotte, North Carolina 28217
Facsimile: 704.329.7998


**SARABETH'S KITCHEN INC.**

By: _____

Name:  Sarabeth Levine

Title:  President


**SARABETH NOTICE TO:**

Bill and Sarabeth Levine
West 78th Street, Apt. 5
New York, NY  10024
Fax: (718) 589-8412

**COPY OF NOTICE TO:**
Alan C. Winick, Esq.
Sheppard Mullin Richter & Hampton, LLP
30 Rockefeller Plaza, 24th Floor
New York, NY 10112
Fax: (212) 332-1242

SERVICES PROGRAM: FEE

*Financial
Arrangements*

Compass shall provide Client with the supply and management of Services in exchange for which Client shall pay to Compass a Management Fee. Client shall retain all income derived, and bear all Operating Charges resulting, from the sale of manual food services. In the event that receipts from manual food services are less than Operating Charges, Client shall pay to Compass such difference (**Subsidy**). In the event that receipts from manual food services are greater than Operating Charges, Compass shall pay to Client such overage.

*Terms*

**Management Fee** means an annualized fee in an amount equal to:

- Flik's Management Fee – the greater of 6% of Net Sales (as defined below) or $200,000 annually (the $200,000 Minimum Annual Management Fee will be prorated for any partial year).
- Sarabeth's Fee - 4% of Net Sales.  These fees shall begin at the time that an individual facility changes its name to "Sarabeth's".

The Minimum Annual Management Fee shall automatically be adjusted annually at a rate equal to the greater of the then-current rate published for the relevant Consumer Price Index or for the relevant Employment Cost Index.

**Net Sales:**     The term "Net Sales" means the total gross sales price of all goods sold and services rendered, in or from the Restaurants, or in connection with any Services as contemplated herein (excluding employee tips), whether for cash or on credit, (i) less the amount of all refunds or other adjustments, made to customers (as hereinafter provided) regarding any such goods or services, and (ii) also excluding from such total gross sales price the amount of any and all Federal, state and local taxes imposed upon the retail sale of goods or services and measured directly by the retail sales price, including so-called "sales" or "use" taxes (Federal, state or local) and retailer's excise taxes imposed from time to time under provisions of the United States Internal Revenue Code, but only upon the condition that the amount of each such tax (other than a so-called value added tax) is an addition to the gross sales price of goods or services, is stated as a separate charge or charges upon the sales receipt or other statement given to the customer, is collected from the customer, and is paid over, either before or after collection, to the appropriate Federal, state or local governmental authority. Any promotional discounts issued by Flik or Sarabeth's provided without charge to customers shall not be considered Net Sales.

All sales and income derived (the "Sales") will be recorded through the Client POS register system and Client shall control all funds. Once Compass has its POS system in place, all Sales will be recorded through the Compass system and Compass will control the funds and make monthly settlements with Client.  Compass agrees to accept all the current modes of payment accepted at the restaurants.

The parties agree to prepare an estimated annual budget to clarify the accounting and Operating Charges of the Agreement.

**Operating Charges** means an accrual of charges and expenses incurred or allocated for operation and administration of Services. Such operation and administration charges and expenses may include, but shall not be limited to, the following: (i) Purchase or rental, storage, and maintenance of inventory, equipment, and systems (any such material charges and expenses in excess of 5% of the budgeted cost must be approved by Client); (ii) Provision of training, relief staff, wage and salary, payroll tax, FICA, FUI, SUI, Employee benefits such as medical, dental, life, workers' compensation, and state disability insurance, payroll and benefit plan preparation, processing, and administration in an amount equal to thirty four percent (34%); ; (iii) Payment of sales or property taxes, licenses, permits, rent, special security costs, cash or property losses unrelated to Compass Employees; (iv) Deployment or investment of capital in connection with the

Services (as approved by Client); and (v) Management Fee. In the event of a change in social security taxes or the federal or state unemployment taxes, or in the event of a imposition of new federal, state, or local payroll based taxes, or in the event of an increase in the minimum wage rate or the enactment of any "living wage" or similar laws by any governmental entity, or an increase in costs of Employee benefits, the foregoing Operating Charges shall be changed by the projected change in costs to Compass from the date such change occurs. Notwithstanding the foregoing definition of Operating Charges, in the event that a determination has been made by the appropriate governmental authority prior to the date of this Agreement that the Subsidy payment, either in part or in full, paid by the Client pursuant to this Program, is subject to any sales tax or any similar tax, the full amount of such tax and any interest and/or penalties with respect thereto concerning such Subsidy shall be an Operating Charge; and in the event that a determination is made during the term of this Agreement or after the term of this Agreement by the appropriate governmental authority that the Subsidy payment, either in part or in full, paid by the Client pursuant to this Program, is subject to any sales tax or any similar tax, the full amount of such tax, together with any interest and/or penalties with respect thereto concerning such Subsidy, shall be an Operating Charge and shall immediately, upon receipt of an invoice from Compass therefore, be reimbursed by Client to Compass notwithstanding the year in which such determination is made. The Client shall, in addition, from the time of such determination forward, pay such tax to Compass in the same manner as all other Operating Charges.

*Consulting Services*

Upon commencement of this Agreement, Compass will submit an invoice to Client in the amount of $150,000 (the "Development Fee"). Client agrees to pay the Development Fee to Compass within fifteen (15) days of receipt of invoice. Compass and Sarabeth's agree to commence consulting with Lord & Taylor and their design team on the lay-out and equipment for each café, kitchen, seating, vending and other food related areas to effectively transition and convert the Facilities to Flik and Sarabeth's.

*Investment*

Within ten (10) days of commencement of this Agreement, Compass will issue a check to Client representing a non-reimbursable investment in the amount of $150,000 (the "Investment"). Compass will internally amortize the Investment on a straight line monthly depreciation basis over five (5) years from the Effective Date of the Agreement. If the Agreement is terminated prior to the full amortization of the Investment by either party for any reason, then Client promises to pay the unamortized balance to Compass within thirty (30) days of the termination date.

*Client Investment & Conversion Plan*

Client shall make a multi-million dollar investment (not to exceed $3.5 million without Client's approval) for initial startup and to improve the facilities and outfit them for the conversion to one of the agreed upon Sarabeth concepts. The conversion of the facilities to the Sarabeth's concept will commence within six (6) months from the effective date of the Agreement and that a minimum of four facilities, inclusive of New York City, shall be converted to the Sarabeth's concept within twenty four (24) months from the effective date of the Agreement.

*Prices*

Prices for the sale of Food Services are determined by mutual consent of Client and Compass, which prices may be adjusted.

*Advance*

Client promises to disburse to Compass, within 10 days of the Effective Date, an amount equal to $350,000 (**Advance**), to fund one (1) months' working capital needs for Operating Charges. The Advance shall be reimbursed to Client within ten (10) days following termination of the Agreement.

*Pre-Opening Expenses*

Client promises to pay to Compass all pre-opening expenses. Pre-opening expenses include, but are not limited to, meals and lodging, opening promotions and advertising, accounting and operating manuals and systems, interviewing, crew training, and Operating Charges related to preparing for, and commencing performance of, Services. The parties agree to prepare a budget for the pre-opening expenses.

*Payment Terms*

Net twenty (20) days of Billing Statement date via Client check, credit card, (including

the American Express card) or electronic fund transfer to the account and banking institution designated by Compass. Any credit card fees shall be considered an Operating Expense. Compass shall invoice Client each week for the estimated amount of any Subsidy incurred during such week. Client will pay Compass twice a month on the 7th and 21st. At the end of each monthly accounting period, Compass shall prepare a Billing Statement for such period. Any difference between the total of the weekly Billing Statements and the Subsidy due per the Billing Statements shall be billed or credited separately.  Fees due Sarabeth shall be paid monthly.

***Hours of Operation***

Correspond to customary Client operating hours and days of operation, or as otherwise agreed.

| *Summary of Responsibilities* | | Compass | Client |
|---|---|:---:|:---:|
| **Inventory** | food, beverages, detergent, paper supplies, postage* | X | |
| **Services Equipment** | | | |
| Fabrics | linens, uniforms* | X | |
| Smallwares as of the Effective Date | china, flatware, glassware* | X | |
| Expendable Equipment | pots, pans, bowls, utensils, measuring/mixing tools, knife sharpening tools | | X |
| Non-Expendable Equipment | point-of-sale units, cash drawers & computer processing systems, dining furniture, food-production appliances, kiosks & server/display units, maintenance & sanitation supplies/appliances | | X |
| Smallwares Post Effective Date | china, flatware, glassware | | X |
| **Operation Facilities** | food production & storage space as agreed | | X |
| **Utilities** | telephone hardware, lines & service, 220w electric current, lighting fixtures, gas & fuel, HVAC, hot & cold water, steam, refuse collection & removal, facilities sewerage disposal, extermination service, fire safety systems | | X |
| **Offices** | | | |
| Furnished Administrative Office Space | 1 office | | X |
| Furnishings | lighting, desks, chairs, file cabinets, telephone hardware, lines & service, 110w electric current, digital & analog wiring, personal computer hardware & software applications | | X |
| **Cleaning** | | | |
| Operation & Dining Facilities | windows, ceilings, fans & lighting fixtures, ventilation fittings & interiors, grease traps, restrooms, carpeted areas, walls above 6 ft., and professional cleaning of kitchen and dining room floors on a mutually agreeable schedule | | X |
| | exterior of equipment in food storage & preparation areas, walls up to 6 ft., floors, exterior of hoods & vents, dining furniture | X | |
| Offices | carpets/floors, desks, lighting fixtures, trash removal | X | |
| **Maintenance** | Client Premises, Operation Facilities, Services Equipment, Utilities, Offices | | X |
| **Services Staff** | adequate staff of qualified Employees & agents to perform Services & related administration | X | |

* These items will be provided to Client by Compass, but shall be reflected on the Billing Statement as an Operating Charge.

Exhibit A – Facility List

**Fifth Avenue**

(2 café locations)

424 Fifth Avenue
New York, NY 10018

**Manhasset**

1440 Northern Blvd.
Manhasset, NY 11030

**Garden City**

1200 Franklin Avenue
Garden City, NY 11530

**Eastchester**

750 White Plains Road
Scarsdale, NY 10583

**Washington/Chevy Chase**

5255 Western Ave
Washington, DC 20015

**Stamford**

110 High Ridge Road
Stamford, CT 06905

**Westfield**

609 North Avenue
Westfield, NJ 07090

**The Fashion Center**

East Ridgewood Avenue
Paramus, NJ 07652

CLIENT NOTICE TO:
Name: Michael G. Culhane
Title: Executive Vice President & CFO
Facsimile No.: 212-827-5224

COMPASS GROUP USA, INC. D/B/A FLIK INTERNATIONAL CORP
3 International Drive
Rye Brook, NY 10573

By: _____

Name: Mr. Scott Davis

Title: President

Signature Date: _____

COMPASS NOTICE TO:
Name: Mr. Scott Davis
Title: President
Facsimile No.: (914) 935-5330

COPY OF NOTICE TO:
General Counsel & Secretary
2400 Yorkmont Road
Charlotte, North Carolina 28217
Facsimile: 704.329.7998

SARABETH'S KITCHEN INC.

By: _____

Name: Sarabeth Levine

Title: President

SARABETH NOTICE TO:

Bill and Sarabeth Levine
West 78th Street, Apt. 5
New York, NY 10024
Fax: (718) 589-8412

COPY OF NOTICE TO:
Alan C. Winick, Esq.
Sheppard Mullin Richter & Hampton, LLP
30 Rockefeller Plaza, 24th Floor
New York, NY 10112
Fax: (212) 332-1242

Lord and Taylor (FINAL).doc                    7

<u>**Exhibit B**</u>

**First Termination Notice**



Robert Wehrle
SVP, Stores
Tel:  646-802-4935
Email: robert.wehrle@hbc.com

---

<u>Sent via Courier and Electronic Mail</u>

May 3, 2019

Mr. Scott Davis, President
Compass Group USA, Inc. d/b/a Flik International Corp
3 International Drive
Rye Brook, NY 10573

With a copy to:

General Counsel & Secretary
Compass Group USA, Inc. d/b/a Flik International Corp
2400 Yorkmont Road
Charlotte, North Carolina 28217

Dear Mr. Davis:

**Re: Termination of the Food Services Agreement dated as of May 30, 2008, as amended (the "Agreement"), between Lord & Taylor LLC (the "Client") and Compass Group USA, Inc. d/b/a Flik International Corp ("Compass"), which was amended to remove Sarabeth's Kitchen Inc. as a party effective February 7, 2019.**

All capitalized terms used herein but not defined have the meaning in the Agreement.

Pursuant to Section 5.1 of the Agreement, this letter serves as 120 days prior notice of termination of the Agreement, which will be effective September 1, 2019, for the following Premises:

- Manhasset – 1440 Northern Boulevard, Manhasset, NY 11030;
- Garden City – 1200 Franklin Avenue, Garden City, NY 11530;
- Eastchester – 750 White Plains Road, Scarsdale, NY 10583;
- Stamford – 110 High Ridge Road, Stamford, CT 06905;
- Westfield – 609 North Avenue, Westfield, NJ 07090; and
- The Fashion Center – East Ridgewood Avenue, Paramus, NJ 07652.

Upon termination, please note your obligations under the Agreement including but not limited to (i) reimbursing the Client its Advance of $350,000 within ten (10) days following termination of the Agreement pursuant to the attached Services Program, and (ii) promptly

## <u>Exhibit C</u>

**Second Termination Notice**

**LE TOTE, INC.**
3130 20ᵗʰ Street
San Francisco, California 94110

*Sent via Courier and Electronic Mail*

Mr. Scott Davis, President
Compass Group USA, Inc. d/b/a Flik International Corp.
3 International Drive
Rye Brook, NY 10573

With a copy to:

General Counsel & Secretary
Compass Group USA, Inc. d/b/a Flik International Corp.
2400 Yorkmont Road
Charlotte, North Carolina 28217

March 20, 2020

Re:     **Termination of the Food Services Agreement dated as of May 30, 2008, as amended (the
        "Agreement"), between Lord & Taylor LLC (the "Client") and Compass Group USA, Inc.
        d/b/a Flik International Corp. ("Compass"), which was amended to remove Sarabeth's
        Kitchen Inc. as a party effective February 7, 2019**

Dear Mr. Davis:

All capitalized terms used herein but not defined have the meaning in the Agreement.

Pursuant to Section 5.1 of the Agreement, this letter serves at 30 days' prior written notice of termination
of the Agreement, which will be effective April 30, 2020, for all of the Premises.

Upon termination, please promptly perform all of your obligations under the Agreement, including, but
not limited to (i) reimbursing Client its advance of $350,000 by May 4, 2020 and (ii) promptly returning
all Services Equipment, Offices and Utilities (including chinaware, glassware, flatware, trays, utensils and
other smallwares) in a similar condition, ordinary wear and tear excepted, pursuant to Section 5.3 of the
Agreement. Client's inbound wire information is enclosed.

We would like to sincerely thank you for the services you have provided.

Should you have any questions, please do not hesitate to contact the undersigned.

Regards,

LORD & TAYLOR LLC

Robert Wehrle
Senior Vice President

returning all Services Equipment, Offices and Utilities (including chinaware, glassware, flatware, trays, utensils, and other smallwares) in a similar condition, Ordinary Wear and Tear expected, pursuant to Section 5.3 of the Agreement.

We would like to thank you for the services you have provided.

Should you have any questions, please do not hesitate to contact the undersigned.

Regards,

**LORD & TAYLOR LLC**

Robert Wehrle
SVP, Stores
Lord & Taylor LLC

## Exhibit D

**Letter**

**Le Tote, Inc.**
**250 Vesey Street, 22nd Floor**
**New York, NY 10281**

May 14, 2020

Compass Group USA, Inc.
d/b/a Flik International Corp
3 International Drive
Rye Brook, New York 10573
Attn:  Scott Davis, President

With a copy to:

Compass Group USA, Inc.
d/b/a Flik International Corp
2400 Yorkmont Road
Charlotte, North Carolina 28217
Attn:  General Counsel & Secretary

> Re:  Renewed demand for immediate payment of outstanding obligations pursuant to the Food Services Agreement, dated as of May 30, 2008 (the "Agreement"), by and between Lord & Taylor LLC ("L&T") and Compass Group USA, Inc. d/b/a Flik International Corp ("Compass").

Dear Mr. Davis,

On March 20, 2020, L&T provided Compass with 30 days' prior notice of termination of the Agreement, pursuant to the letter attached hereto as Exhibit A (the "Notice of Termination"), in accordance with Section 5.1 of the Agreement.  The Notice of Termination provided that the termination of the Agreement was effective as of April 30, 2020, and requested that Compass reimburse L&T its $350,000 advance (the "Advance") by May 4, 2020. Compass did not reimburse L&T the Advance, and has continued to withhold the Advance despite repeated requests from L&T.

L&T hereby demands that Compass immediately reimburse L&T the Advance in full. Pursuant to the Services Program attached to the Agreement, Compass was required to reimburse L&T its Advance within ten days following termination of the Agreement. Moreover, Section 5.2 of the Agreement provides that termination shall not operate to limit, reduce, cancel, or otherwise modify payment obligations of any kind that have accrued as of the date of termination. Compass's failure to reimburse the Advance constitutes a fundamental breach of the terms of the Agreement, and L&T expressly reserves all rights and remedies with respect thereto

If litigation is required to enforce L&T's rights, L&T will seek all costs and attorneys' fees incurred in connection with the enforcement of its rights and remedies under the Agreement. L&T expressly reserves all rights, defenses, and remedies available to it, at law and in equity, whether pursuant to the Agreement or otherwise, and nothing contained in this letter shall constitute a waiver thereof.

Sincerely,

_____
Michael van den Berg
Senior Vice President & General Counsel

[*Signature Page to Demand Letter*]

## <u>Exhibit A</u>

**Notice of Termination**

**LE TOTE, INC.**
**3130 20th Street**
**San Francisco, California 94110**

Sent via Courier and Electronic Mail

Mr. Scott Davis, President
Compass Group USA, Inc. d/b/a Flik International Corp.
3 International Drive
Rye Brook, NY 10573

With a copy to:

General Counsel & Secretary
Compass Group USA, Inc. d/b/a Flik International Corp.
2400 Yorkmont Road
Charlotte, North Carolina 28217

March 20, 2020

Re:    **Termination of the Food Services Agreement dated as of May 30, 2008, as amended (the
       "Agreement"), between Lord & Taylor LLC (the "Client") and Compass Group USA, Inc.
       d/b/a Flik International Corp. ("Compass"), which was amended to remove Sarabeth's
       Kitchen Inc. as a party effective February 7, 2019**

Dear Mr. Davis:

All capitalized terms used herein but not defined have the meaning in the Agreement.

Pursuant to Section 5.1 of the Agreement, this letter serves at 30 days' prior written notice of termination
of the Agreement, which will be effective April 30, 2020, for all of the Premises.

Upon termination, please promptly perform all of your obligations under the Agreement, including, but
not limited to (i) reimbursing Client its advance of $350,000 by May 4, 2020 and (ii) promptly returning
all Services Equipment, Offices and Utilities (including chinaware, glassware, flatware, trays, utensils and
other smallwares) in a similar condition, ordinary wear and tear excepted, pursuant to Section 5.3 of the
Agreement. Client's inbound wire information is enclosed.

We would like to sincerely thank you for the services you have provided.

Should you have any questions, please do not hesitate to contact the undersigned.

Regards,

LORD & TAYLOR LLC

Robert Wehrle
Senior Vice President